BETANCOURT ET AL. *v.* RODRÍGUEZ ET AL.

APPEAL from the District Court of San Juan.

No. 569.—Decided January 10, 1911.

APPEAL—APPELLANT'S BRIEF—ASSIGNMENT OF ERRORS.—In cases where the appellant's brief does not contain an assignment of errors, in accordance with the provisions of sections 42 and 43 of the Rules of the Supreme Court, the latter, in considering the case, may confine itself to such errors as are fundamental for the purposes of the appeal.

PARAPHERNAL PROPERTY—PROPERTY OF THE CONJUGAL PARTNERSHIP.—The fact that an estate acquired by the wife with money derived from her paternal inheritance was sold by her, and that some time afterward she bought another conjointly with her husband, is not sufficient to justify the affirmation that said acquisition was made with her own property and has the character of parapherna.

ID.—ACQUISITION BY PRIVATE INSTRUMENT.—It appearing that the estate referred to in the case at bar was acquired by both spouses during the mar-

riage, it must be considered as belonging to the conjugal partnership; and the fact that the acquisition was made by private document and that the latter was converted into a public instrument after the death of the wife, the sale to the widower being stated therein cannot affect the character of said property as belonging to the conjugal partnership.

ID.—DISSOLUTION OF THE CONJUGAL PARTNERSHIP—OWNERSHIP BY THE WIDOWER.—Upon the dissolution of the conjugal partnership by the death of the wife, the husband cannot be reputed absolute owner of the property belonging to the conjugal partnership, or of some of said property, until a liquidation and partition has been made and he has acquired, by adjudication, the exclusive ownership thereof.

ID.—THIRD PERSON.—He has the character of a third person who acquires from a person who, according to the registry, has the right to convey, but such character cannot be alleged by one who has acquired at a time when the estate was not recorded in favor of the vendor, nor by one who has knowledge of the fact that the vendor acquired the estate by private instrument during his marriage, it being, therefore, property belonging to the conjugal partnership, the public document of sale in his favor having been executed after the death of his wife.

PROOFS—DEPOSITIONS—TESTIMONY CONTRARY TO THE DECLARATIONS CONTAINED IN A PUBLIC INSTRUMENT.—In the case at bar objection was made to the admission of a deposition because it contained declarations contrary to those made by the deponent in a public instrument, said objection being based on paragraph 2 of section 101 of the act regulating the introduction of evidence in civil proceedings. *Held:* That this provision is applicable only to questions between parties and that the deponent is no party to the action, nor was the deposition offered in evidence by any one of those who appeared as parties to the public instrument, nor did the deponent have a personal interest in the contract, which was the object of the public instrument, he appearing therein as attorney in fact of one of the parties. For all which reasons the provision hereinbefore cited is not applicable to the case.

ID.—PROOF OF AN ACCESSORY OR INCIDENTAL FACT.—The court has power to permit at the trial the investigation of an accessory or incidental fact which it considers directly related to the question at issue and the elucidation whereof is necessary to a proper decision.

ID.—ADMISSION OF IRRELEVANT EVIDENCE—HEARSAY EVIDENCE—APPEAL.—The admission of testimony constituting hearsay evidence and the denial of a motion for the elimination thereof, is not an error justifying the reversal of the judgment, if the rights of the party are not prejudiced thereby, owing to the existence of other evidence sufficient to establish the fact to which the evidence improperly admitted refers.

JUDGMENT—NULLITY OF DEEDS.—In the case at bar the lower court decreed the nullity of certain deeds and of the records thereof, and the appellant alleged that inasmuch as the nullity of the contracts contained therein had not been decreed, their validity should be sustained. *Held:* That the evident intention of the lower court was to decree the nullity of the contracts to which said deeds referred, since the ground for the declaration of nullity was the lack of rights in one of the parties to make the conveyances the object of said contracts.

The facts are stated in the opinion.

*Messrs. Eduardo Cautiño* and *Jacinto Texidor* for appellants.

*Mr. José G. Torres* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In this record we do not find any assignment of errors, such as is required by rules 42 and 43 of this court, to be set out in the brief of the appellant; and for that reason we might confine our consideration of this case to such errors as might be deemed fundamental. This omission is the more surprising as the counsel for the appellant in this case have, in another case, made the omission of such an assignment of errors the basis of a successful motion to suppress their adversary's brief. An assignment of errors is a very material assistance to this court in the study of any case, and should never be omitted from the brief of the appellant.

But as no adverse motion appears in the record, and the brief of appellant sets out seven "legal" grounds for a reversal of the judgment of the court below, which may tacitly be regarded to serve the purpose of an *assignment of errors,* we will review the case as therein presented.

In this case a complaint was filed in the District Court of San Juan by Herminia Vicenta Betancourt *et al.* against Nicolás Betancourt, Agustín Rodríguez, and Francisco del Valle, alleging substantially therein the following facts: That the plaintiffs are the sole and universal heirs of Mrs. Herminia Rivera; that in the year 1889 Antonio Zechini sold, by virtue of a private agreement, to Nicolás Betancourt, father of the plaintiffs, four acres and a quarter of land, situated in the ward of Guzmán Abajo, of the municipal jurisdiction of Río Grande; that Betancourt bought such land with money belonging to his wife, Herminia Rivera, and with the money of his said wife he also built a house on the land so purchased; that Herminia Rivera died before the execution of the deed of purchase and sale; that at the death of Zechini García the property aforesaid was adjudicated to

his daughters, Josefina, Angela, and María, and thereafter, on March 15, 1907, Antonio Zechini Veve, who was attorney in fact of the said women, executed a deed of sale of said portion of land in favor of Nicolás Betancourt, it being stipulated in said deed that the sale had been made before the execution of the deed; on the following day Betancourt sold three acres of land from the same property to Francisco del Valle, and he also sold on the same day the three acres aforesaid to Agustín Rodríguez; that on July 17, 1907, Betancourt sold to Rodríguez one acre and a fraction of land and a house, which was what remained of the property; that at the time of the making of the sales del Valle and Rodríguez knew the derivation of said lands and house, which had been bought during the life of Mrs. Herminia Rivera and with money of her own. And it was prayed that it be declared that the four acres and a fraction of land and the house are the property of the plaintiffs as an inheritance from their mother, Mrs. Herminia Rivera, their father, Betancourt, having the legal usufruct; that the sales made by Betancourt and del Valle are null, and so are the deeds and inscriptions which they presented; and further, that in the event that it be declared that the lands and house are not the exclusive property of Mrs. Herminia Rivera, said property should not be alienated without a previous liquidation of the conjugal partnership; and that the defendants be adjudged to pay the costs.

Only the defendant, Agustín Rodríguez, filed his answer to the complaint, denying therein the essential allegations of the complaint, in reference to the purchase made of the property in a private deed, and that the same was made with separate money of Mrs. Herminia Rivera, alleging also in said answer that it is true that by virtue of the public deeds of March 16 and July 17, 1907, he had bought from Mr. Francisco del Valle three acres of land, and from Don Nicolás Betancourt one acre and a fourth and a house, he acquiring such properties for a certain consideration, free from

encumbrances, and from its only and exclusive owners according to the dominion titles thereof, alleging, further, that even if the private agreement of which the complaint speaks were true, this defendant had nothing to do with the same, which was unknown to him, nor had such contract been made to appear in the deed.

The trial court gave judgment in favor of the plaintiffs, declaring:

"*First.* That there pertains to the conjugal partnership of Nicolás Betancourt and Herminia Rivera the following property: A parcel of land consisting approximately of 4.25 acres of land, situate in the ward of Guzmán, in the judicial jurisdiction of Río Grande, equivalent to 1 *hectare,* 47 *ares,* and 4 *centiares,* being bounded on the north by Mr. Ramón Pérez Villamil; on the south by the road leading to Río Grande; on the east by the same road; and on the west by the vertex of the triangle which is formed by the lines of the road which are adjacent to Mr. Ramón Pérez Villamil and the property known as 'Las Flores' which belonged to Mr. Valentín Flores.

"*Second.* That the deeds by which Nicolás Betancourt sold to Agustín Rodríguez and Francisco del Valle a part of this property, and also that by which the latter sold to Agustín Rodríguez a portion of his purchase, are null and void.

"*Third.* That the entries which those purchases have caused in the registry should be canceled.

"*Fourth.* That the defendants pay the costs."

On the trial of the case, which was held on April 19, 1910, the evidence established the following

FACTS:

First.  The plaintiffs are the children and heirs of Mrs. Herminia Rivera Correa, who was married to the defendant, Nicolás Betancourt García.

Second.  That during the marriage the wife received, by public document, from the hands of her brother, Mr. Felipe Rivera Correa, the amount of $350, which belonged to her by inheritance from her father, Mr. Felipe Rivera Romero.

Third.  That on the next day—that is to say, on May 23, 1885—the said married woman, assisted by her husband,

bought a piece of property from her brother, Don Felipe, for the price of $700, of which that gentleman made payment in the following manner: $350 in the paternal inheritance which he had delivered the day before, and the other $350 in neat cattle, which were in the possession of the vendor, and were derived from gifts which her godfather had made to the purchaser.

Fourth. The property to which reference has been made in the former paragraph was sold by Da. Herminia to Mr. Eduardo González Beltrán, on May 21, 1889, for the price of $600, which she acknowledged to have received before that transaction.

Fifth. On March 15, 1907, being already a widower, Nicolás Betancourt made with Antonio Zechini a contract of purchase and sale of four acres and a quarter of land, taken off from another larger piece of property, making it appear in the notarial contract that upon the said lot so segregated the said Betancourt had previously constructed a house and that the agreement of sale had been consummated some time before.

Sixth. Although this contract had been reduced to a public document at the date above mentioned, nevertheless the sale had been made long before, while Mrs. Herminia Rivera Correa was even yet living, and it was consummated by the spouses, Mr. Nicólas Betancourt and Mrs. Herminia Rivera, with Mr. Antonio Zechini y Gracia about the years 1889 to 1890 by means of a private contract; and between that date and 1892 a house was constructed on the said land in which Doña Herminia lived and died, the same being enlarged after her death.

Seventh. On the day following the delivery of the writing mentioned in paragraph 5, the defendant, Nicolás Betancourt, sold to Francisco del Valle López, another of the defendants, three acres of the said property, notwithstanding the purchaser knew that the property of four and a quarter acres from which this portion had been taken had been

bought by his vendor during his marriage with Doña Herminia, although the public writing had been made after he had become a widower.

Eighth. On March 16, 1907, the same day on which Francisco del Valle bought, he sold by public writing two of these three acres to Agustín Rodríguez, and afterwards, on July 17, 1907, the latter bought also from Nicolás Betancourt the acre and a quarter with the house which remained after the sale which he had made to del Valle.

When Agustín Rodríguez made both purchases he knew that the property from which they were derived had been purchased by the spouses, Mr. Nicolás Betancourt and Mrs. Herminia Rivera, although the public contract of Zechini and Betancourt appeared to have been delivered while the latter was a widower.

Ninth. By virtue of these sales the four acres and a quarter of land remain distributed thus: Three acres and a quarter to the defendant, Rodríguez, and the other remaining one to the other defendant, del Valle.

Tenth. When the contracts to which these sales refer were delivered the original property of four acres and a quarter was not registered in favor of Nicolás Betancourt in the registry of property, since it was not presented until the following year, 1908.

On considering and duly weighing the foregoing facts, we are constrained to hold that the trial judge was right in arriving at the following

### LEGAL CONCLUSIONS:

First. The fact that the property acquired by the wife with money proceeding from her paternal inheritance was sold by her and some time afterwards she bought another, in union with her consort, is not sufficient to enable us to affirm that the latter acquisition was effected with her own property and that it had the character of her separate prop-

erty, for which reason the property in controversy does not possess that character.

Second. It is indubitable, from the proofs on the trial, that the acquisition of the four and a quarter acres which are in controversy was made by Mrs. Herminia Rivera and her husband, and must be regarded as belonging to the conjugal partnership, notwithstanding that after the death of that lady the private contract was delivered when the sale was not raised to a public document, and that in this the sale appears in favor of the widower of the said Mrs. Herminia Rivera.

Third. The conjugal partnership having been dissolved by the death of the wife, the husband was not the absolute owner of the property mentioned and consequently he.could not freely dispose of it, inasmuch as he had not acquired his separate title by means of liquidation, account, and partition of the ganancial property.

Fourth. Although according to the public title of the property it appears to have been bought by the widower, nevertheless the purchasers knew before the delivery of the document that the acquisition was made while he was married to Mrs. Herminia Rivera, wherefore they could not be considered as third parties, because a third party, according to the Mortgage Law, is he who acquires, or the person who according to the registry appears to have, the title; and when the defendants bought the property was not registered in favor of their vendor.

For these reasons it might well be declared, as was done by the trial court, that the property in question belongs to the conjugal partnership of Mr. Nicolás Betancourt and Mrs. Herminia Rivera, although the title appears as if it were purchased by the former while he was a widower; that the sales made by Nicolás Betancourt to Francisco del Valle and Agustín Rodríguez are null, as are those between the two last named, and that the deeds of conveyance and the registration should be canceled.

During the progress of the trial the defendant, Rodríguez, who is now the appellant, took three exceptions to the introduction of certain evidence and duly reserved the points made by a bill of exceptions properly prepared and certified. These we will consider in their order.

The first exception as contained in the bill reads substantially as follows:

"First. There was presented by the plaintiff testimony by deposition made by Antonio Zechini y Veve; the defendant objected to its admission because the contents thereof are contradictory of what was established by the same Antonio Zechini y Veve in the writing, of date March 15, 1907, by which Antonio Zechini y Veve, as attorney in fact of his sisters, sold to Nicolás Betancourt a rustic property, which is the object of this suit."

In this writing the vendor does not establish that the property was sold by a private document to Betancourt nor does he say at what date this private sale was made, of which he speaks for the first time in his deposition. In the writing there are statements which are necessarily hearsay; these were excluded by the court; but in respect to the admission of the deposition the court allowed it. Appellants' counsel go on to say:

"We believe that this deposition must be understood to be covered by the second paragraph of article 101 of the Law of Evidence, inasmuch as it contradicts the statement made in a public document. In effect the writing says that the principals of Zechini are the owners of the property and that they have agreed to the sale with Betancourt; and the deposition says that Betancourt was already at that date the owner of the property. This party understands that this deposition ought not to be admitted by the court. And to this admission he takes an exception."

It must be observed that the witness, Zechini, is not a party to this suit and for that reason paragraph 2, section 101, of the Law of Evidence, does not apply to him as by its terms it relates only to questions between parties. And, moreover, the deposition was not offered in evidence by Nico-

lás Betancourt, who was a defendant in this case, but by the plaintiffs, who were interested adversely to him. Further, the testimony of Zechini must be regarded rather as explanatory than contradictory of the recitals contained in the deed and falls outside the rule invoked by the appellant, And, besides, Zechini is only attorney in fact in the deed of conveyance and had no personal interest therein. This exception cannot therefore be sustained.

The second exception set forth is substantially in the following words:

"Second. While testifying the witness, Felipe Rivera, was asked by the plaintiff the following question:

" 'Who occupied the land in question? Did Rodríguez occupy it, or who?

" 'Witness: Always my nieces.'

"To this question this party objected and asked that it be stricken from the record, basing the objection on the fact that the possession had not been alleged on the part of the plaintiffs. The court admitted the question and the answer and this defendant took an exception, which he now maintains, basing it on the law of evidence, which in its article 34 only permits proof of allegations essential and pertinent to the questions at issue. And that of the possession on the part of the defendants is not alleged in the complaint."

The objection made is scarcely tenable. Although the possession is not directly alleged to be in any one, still it is a collateral fact of some importance and the court might consider it as relevant to the question in dispute between the parties. The court might well regard the possession to be "a collateral fact directly connected with the question in dispute and necessary to its proper determination;" and so in its discretion the inquiry was permissible under the terms of the statute itself. The exception was not well taken.

The third exception which we find in the record is in effect as follows:

"Third. On his examination the witness, Felipe Rivera, in answer to plaintiff's questions, said:

" 'In regard to this matter I know that Don Nicolás Betancourt,

father of Herminia and the other sisters, about the years 1907–1908, tried to sell to Mr. Francisco del Valle a tract of land which was the property of his children, which belonged to them by inheritance and was purchased with money of their mother; I went to see Mr. del Valle and I told him not to buy said land and house because the same belonged to the daughters of Mr. Nicolás Betancourt, and Mr. Nicolás could not sell them; del Valle answered me that he had already given some money in connection with the contract, and that Mr. Antonio Zechini had informed him that he had to deliver a deed to Mr. Nicolás and he could not lose his money. One or two months thereafter I heard that they persisted in the transaction and I requested Mr. Luis Betancourt y García, son of Mr. Nicolás Betancourt, to come and see me, in order that he should see his father and try to avoid the contract, returning the amount of money which had been delivered by del Valle to Betancourt; Betancourt said to me he should go to his principal, Mr. Eduardo González, in order to try to get the money; that González offered to give him the money, and he went to González and Agustín Rodríguez, who had already bought a portion of the land, but neither of the two wished to receive the amount, Rodríguez stating that he did not wish to sell the land, and it was worth $1,000 if he wanted it; that he did not cede the same, and that the said land was worth $1,000 if he wished it; then I advised my nieces to get a lawyer in order to institute the proper action to establish their rights.' ''

And afterwards being questioned, on cross-examination, by the attorney for the plaintiff, the witness used the following words:

''Betancourt, the son, went to Mr. Eduardo González, who was his principal, in order to see if he could lend him some money to return the same to del Valle.

''Defendant. And did Mr. Eduardo give the money?

''Witness. Offered it.

''Defendant. How do you know that?

''Witness. Because Betancourt told me so, and then I told him go right away to Rodríguez and del Valle.

''Defendant. And then he went to Rordíguez, and all that happened to him?

''Witness. Yes, sir.

''Defendant. How do you know it?

''Witness. Because he told it to me upon his return.

"Defendant. In this case I request the exclusion of this part from the testimony, as the same is hearsay.

"Judge. I understand you had a right to request it previously, but not after the witness has been heard and questioned about his testimony.

"Defendant. I insist on the exclusion of that part of the evidence.

"Judge. In regard to the matter of Louis Betancourt and García?

"Defendant. Yes, sir.

"Judge. I allow the same to appear in the record for the reason aforesaid, and because the objection was not presented in time.

"Defendant. I except to this ruling of the court for the reason that I made the objection when the witness stated what was told him by Betancourt upon his return."

Counsel for plaintiff continued to state:

"In effect the witness up to this moment had spoken as if he knew of himself and personally what had occurred, and it was only by means of the questions propounded in behalf of the defendant that he came to discover that all that he knew was what Betancourt had said on his return. Naturally, before the witness had said this the defendant, who was not receiving the testimony and who did not see in it at that moment anything that would indicate hearsay, could not make an objection based on the fact that the testimony was hearsay; and only when, by the statement of the witness on cross-examination, he saw what was the origin of his testimony did the defendant come to present an objection that he before thought would have been premature."

This exception would appear to be well taken, notwithstanding the answer made thereto by respondent's counsel in his brief, that the witness had, on his direct examination, said that Betancourt had told him thus and so, because the motion to strike out the testimony was not made too late, being presented before the examination of the witness was concluded. But such an error was a harmless one, since Betancourt himself testified directly to all that Rivera did from hearsay. The suppressing of the testimony of Rivera on that point could not affect the result of the trial, since that of Betancourt remained in the record and was sufficient to prove the fact included in the hearsay testimony.

Fourth. The appellant further contends that the judg-

ment appealed from is not in accordance with the evidence adduced on the trial and its logical result. It does not clearly appear that the tract of land in controversy was itself purchased with funds belonging solely to the wife,. Herminia Rivera, though there are circumstances indicating such to be the fact. As this matter itself was not definitely settled by the judgment of the court below it need not be decided here but left open for further investigation and judicial determination, if necessary. Then we will not undertake to review all the evidence presented on that point nor. to revise the estimate placed by the trial court on the evidence before it touching this question. The fact that Nicolás Betancourt had no right or authority to make the conveyances sought to be annulled is sufficient to support the judgment rendered by the court below, and it should certainly not be disturbed on the ground stated.

Fifth. Appellant Rodríguez invokes, in the capacity of a third party, section 1247 of the Civil Code and article 23 of the Mortgage Law. These legal precepts do not avail him because the document itself shows that some time before the execution thereof the sale of the land had been consummated and that Betancourt had already constructed a house thereupon. Moreover, the verbal evidence shows that Herminia. Rivera, the wife of Betancourt, had lived and died in that house, and that all these facts were actually well known to Rodríguez at the time he attempted to buy the land. He cannot claim to be a "third person" as the same is defined by the Spanish law, or what the American law denominates "an innocent purchaser for a valuable consideration without notice." Such being the case we can pass over the fifth point in the "Legal Grounds" presented in the brief of appellant.

Sixth. As for the sixth point of the legal grounds presented by the appellant, it is enough to say that he cannot claim the protection of article 34 of the Mortgage Law because the instruments in question were not executed by a

person who, according to the registry, had a right thereto, as required by said article, since the deed to Nicolás Betancourt was not at that time registered; nor, if it had been, did it show the property conveyed to be the separate property of Betancourt, since it referred to the previous sale made in the lifetime of his wife and to the house which he had already constructed on the land. There was not a clean record nor, indeed, any record at all, in favor of Betancourt at the time Rodríguez made his attempted purchases.

Seventh. In their seventh legal ground for reversal of the judgment counsel for the appellant, with great subtlety and skill, draw a fine distinction between the nullity of a contract and the nullity of a writing wherein the contract is contained. It was evidently the intention of the court below to decree the nullity of the sales of the land made through the deeds of conveyance, since the nullity was based on the want of power in Betancourt to make the conveyances of the property. But if apt words were not used in the judgment this is not a matter of which appellant can complain; he is not harmed thereby. It is possible that this court might, on a proper showing and request by the appellees, have corrected the judgment if necessary; but none having been made, the language of the same should be left intact.

Then, on a general summary, we find that there were proven on the trial in the court below the following material facts:

First. That the land which is the subject of this suit was acquired during the life of Doña Herminia Rivera, the wife of Don Nicolás Betancourt, and that during her life the house thereon was built, where she died.

Second. That after the death of Doña Herminia Rivera the widower had the deed of the land made in his name, in which document it appears that the sale had taken place previously and that the house which is also mentioned already existed on the estate described in the complaint.

Third. That these facts were known to the purchasers,

Francisco del Valle and Agustín Rodríguez, through Felipe Rivera and Luis Betancourt, carnal uncle and brother of the father, respectively, of the plaintiffs.

Fourth. That, notwithstanding such knowledge, they decided to acquire from Nicolás Betancourt, first, two acres of the land, afterwards another acre, and lastly the house with the acre and a remaining quarter.

Fifth. That the purchasers refused to receive the money that they claimed to have given on account, and Rodríguez stated that if they wanted the land it would cost them a thousand dollars.

Sixth. That notwithstanding that three years had elapsed since the deeds were signed, neither del Valle nor Rodríguez have entered into the possession of the land, which still remains in possession of the real owners, the plaintiffs, who are prosecuting this action for nullity.

Seventh. That in the registry there did not appear any right whatever in favor of Nicolás Betancourt nor of Francisco del Valle when the deeds were made to him and to Rodríguez, and they are not within the purview of article 34 of the Mortgage Law. And if the right had appeared, the right of the plaintiffs would also appear, inasmuch as it is proven that the sale took place long before the deed was made, during the life of Doña Herminia Rivera, which is plainly set out in the declaration itself of the vendor, Antonio Zechini, the witness whose testimony was most strongly resisted.

Then applying the existing law to these facts we must arrive at the conclusion that the judgment rendered by the District Court of San Juan, in the First Section, on May 2, 1910, was amply justified and correctly determined.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.